**STATE of Missouri, Respondent,**

v.

**David Matthew SUMMERS, Appellant.**

**No. WD 58150.**

Missouri Court of Appeals,
Western District.

Jan. 23, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2001.

Application to Transfer Denied
May 29, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Emmett D. Queener, Asst. Public Defender, Columbia, for appellant.

Before SPINDEN, C.J., and EDWIN H. SMITH and NEWTON, JJ.

EDWIN H. SMITH, Judge.

David M. Summers appeals from his jury convictions for the class A felonies of assault of a law enforcement officer in the first degree, § 565.081.1,[1] and armed criminal action, § 571.015, for which he was sentenced to consecutive prison terms of life and 50 years, respectively.[2]

In his sole point on appeal, the appellant claims that "the trial court erred in imposing judgment and sentence against [him] for assaulting a law enforcement officer and armed criminal action" because the evidence was insufficient to support his conviction for assaulting a law enforcement officer.

We affirm.

## Facts

On October 22, 1998, the appellant returned to his home in Marshall, Missouri, from work. At the time, his wife, Patricia Summers, and daughter, Hanna, were next door. Mrs. Summers was using the neighbor's telephone to call her employer. Upon returning home, Mrs. Summers gave the appellant a letter indicating that she wanted to leave the marriage. After discussing the matter, the appellant convinced Mrs. Summers that she should go on to work and that they would discuss the

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

2. The appellant was also convicted of resisting arrest, § 575.150, RSMo Supp.1996, and sentenced to ten years, which conviction he does not appeal.

divorce later. Mrs. Summers then packed some clothes and went to her neighbor's, leaving Hanna in the care of the appellant.

At some point, Mrs. Summers called 911 and reported that the appellant would not relinquish custody of their daughter. At approximately 5:06 p.m., Officer Mark Henley of the Marshall Police Department was dispatched to the scene. Officer Henley arrived at the appellant's home at approximately 5:09 p.m. and knocked on the door. The appellant did not answer. Mrs. Summers then approached Officer Henley and advised him that the appellant would not relinquish custody of her daughter to her. The officer asked her if she was currently married to the appellant or if she had a court order granting her custody of their child. Mrs. Summers explained that she was married to the appellant and that she had no such court order. Officer Henley responded that he could not force the appellant to release custody of the child. Mrs. Summers then asked if Officer Henley could retrieve her keys from the house so that she could go to work. Officer Henley replied that he would ask the appellant for the keys.

Officer Henley approached the house and knocked on the front door. No one answered. He proceeded to the side of the house and knocked on the carport door, and again there was no answer. At this point, Mrs. Summers exclaimed that she could hear her daughter crying and that the appellant must be "doing something to her." Officer Henley put his ear to the door, but he could not verify Mrs. Summers' claim. Nevertheless, he again knocked on the door; identified himself as a police officer; and yelled that if the appellant did not come to the door, he was going to kick it in. The appellant responded by shouting "if you fucking come in the house, I'll fucking kill you."

Officer Henley called the dispatcher at 5:13 p.m. for backup. Before backup could arrive, the appellant opened the front door and, standing with his fists clinched, stated again that he would kill Officer Henley if he attempted to enter his home. Officer Henley, standing between the appellant and the screen door, attempted to look around the appellant to determine the status of the appellant's daughter, but he was unable to see or hear her.

The appellant attempted to close the door, but Officer Henley prevented him from doing so by stepping into the house. A struggle ensued, which resulted in the appellant falling backwards onto his couch. Officer Henley straddled the appellant and attempted to restrain him. While Officer Henley was holding the appellant's left hand, the appellant stabbed him with a knife using his right hand. Officer Henley backed away from the appellant and drew his gun. The appellant approached him still holding the knife. Officer Henley stopped the appellant's approach by kicking him in the abdomen. The appellant subsequently fled to his mother's house located close by with Officer Henley in pursuit.

The appellant knocked on his mother's carport door several times before gaining entry. His mother subsequently fled her house through the front door. Officer Henley instructed the appellant's mother to leave the area. While Officer Henley was attempting to force his way through the carport door, backup officers arrived at the scene and entered the house through the front door. These officers arrested the appellant without further resistance.

The appellant was indicted on November 17, 1998, in the Circuit Court of Saline County for one count of assault of a law enforcement officer, § 565.081, a class A felony; one count of armed criminal action,

§ 571.015, a class A felony; and one count of resisting arrest, § 575.150, RSMo Supp. 1996, a class D felony. The appellant filed a motion for a change of venue on November 25, 1998, which the trial court granted on June 30, 1999. Venue was changed to Howard County. His jury trial began on September 16, 1999, and concluded on September 17, 1999, with the jury finding him guilty on all three charges.

The appellant filed a motion for a judgment notwithstanding the verdict or in the alternative for a new trial on October 5, 1999, which was heard and overruled on November 15, 1999. The appellant was sentenced to consecutive terms of life imprisonment for the assault, 50 years for armed criminal action, and 10 years for resisting arrest, respectively.

The appellant appeals from his convictions and sentences for assault of a law enforcement officer and armed criminal action.

## I.

▇ In his sole point on appeal, the appellant claims that "the trial court erred in imposing judgment and sentence against [him] for assaulting a law enforcement officer and armed criminal action" because the evidence was insufficient to support his conviction for assaulting a law enforcement officer. Obviously, it was not error for the trial court to enter judgment and sentence against the appellant in accordance with the guilty verdicts returned by the jury. Hence, we can only assume, after reading the appellant's point relied on in conjunction with his argument thereon, that the ruling he is attempting to challenge on appeal is the trial court's denial of his motion for judgment of acquittal notwithstanding the jury's verdicts of guilty for

assault of a law enforcement officer and armed criminal action. In that context, the appellant argues that his case should not have gone to the jury on those charges in that the State failed to prove each and every element of the offense of assaulting a law enforcement officer beyond a reasonable doubt.[3] Specifically, the appellant asserts that in order to make a submissible case on that offense, the State was required, but failed, to prove that the officer in question, at all pertinent times, was acting within his authority as a law enforcement officer.

The Missouri Supreme Court set out our standard of review in a case where the sufficiency of the evidence is being challenged to support a conviction in *State v. O'Brien*:

A challenge to the sufficiency of the evidence to support a finding of guilt is based in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. No person may be deprived of liberty, 'except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt.' The constitutional sufficiency of the evidence is a question of law to be determined, in the first instance, by the trial court on proper motion by the defendant and again on appeal.

When properly raised by the defendant, the question of sufficiency arises before the case is put to the jury; the challenge is to the 'submissibility' of the case. Therefore, any guilty verdict subsequently rendered by the jury is wholly irrelevant to the question of whether the case was sufficient to go to the jury at

---

**3.** The appellant's conviction for armed criminal action, as a matter of law, cannot stand if the underlying felony of assaulting a law en-

forcement officer is reversed. *State v. Weems,* 840 S.W.2d 222, 228 (Mo. Banc 1992) (citation omitted).

all. The Court's review is limited to determining whether the evidence is sufficient to persuade any reasonable juror as to each of the elements of the crime, beyond a reasonable doubt. To ensure that the reviewing court does not engage in futile attempts to weigh the evidence or judge the witnesses' credibility, courts employ 'a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.' Thus, evidence that supports a finding of guilt is taken as true and all logical inferences that support a finding of guilt and that may reasonably be drawn from the evidence are indulged. Conversely, the evidence and any inferences to be drawn therefrom that do not support a finding of guilt are ignored.

857 S.W.2d 212, 215–16 (Mo. *banc* 1993) (citations omitted).

■■■ To make a submissible case against the appellant for assaulting a law enforcement officer in the first degree under § 565.081, the State was required to introduce evidence from which the jury could have reasonably found each and every element of that offense beyond a reasonable doubt. *State v. Scurlock*, 998 S.W.2d 578, 582 (Mo.App.1999). Section 565.081 provides:

A person commits the crime of assault of a law enforcement officer in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to a law enforcement officer.

Assault of a law enforcement officer in the first degree is a class A felony.

"Law enforcement officer" for purposes of this section is defined as "any public servant having both the power and duty to make arrests for violations of the laws of this state...." § 556.061(17), RSMo Supp. 1999; *State v. Brown*, 989 S.W.2d 652, 653

(Mo.App.1999). To convict under § 565.081, the State was required to show that the appellant knew or was aware that the victim was a law enforcement officer, but was not required to show that the officer at the time of the alleged assault was engaged in the performance of the duties imposed upon him by law. *Brown*, 989 S.W.2d at 653. The question is whether § 565.081.1 should be interpreted as requiring the State to show that the officer was acting lawfully with respect to his statutorily authorized powers and duties.

In interpreting a statute, we are to "ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *State v. Knapp*, 843 S.W.2d 345, 347 (Mo. *banc* 1992) (citations omitted). "The General Assembly is presumed to have intended what the statute says; consequently, when the legislative intent is apparent from the words used and no ambiguity exists, there is no room for construction." *State v. Haskins*, 950 S.W.2d 613, 615 (Mo.App.1997). In reading § 565.081 and § 556.061(17), RSMo Supp.1999, and giving the language used its plain and ordinary meaning, we find no requirement for conviction under § 565.081 that the victim must have been exercising his authority as a law enforcement officer in a constitutional manner at the time of his assault as the appellant contends.

■■■ The appellant does not dispute the fact that the evidence was sufficient to establish that he attempted to cause serious physical injury to the victim and that he knew the victim was a law enforcement officer, as defined in § 556.061(17), RSMo Supp.1999. Rather, in making his claim that the evidence was insufficient to convict under § 565.081, he contends that: the State was required to show that, at the

time of the assault, the victim was acting within his authority as a law enforcement officer; the evidence established that he was not; therefore, he was acting only as a private citizen, who was afforded no protection under the statute. In asserting that the victim was acting unlawfully and outside his authority, the appellant argues that the evidence demonstrated that the victim did not have probable cause to enter the appellant's home without a warrant such that he was acting in violation of the Fourth Amendment protection against unreasonable searches and seizures. The State contends that the statute did not require it to show that the victim was acting within his authority to be entitled to its protection; and that even if it did, the evidence was sufficient to prove that element. We agree with the State that § 565.081 does not require the State to prove that the victim was acting within his authority as a law enforcement officer to be afforded its protection.

The appellant concedes that § 565.081 does not expressly require a showing that the victim was acting within his or her authority as a law enforcement officer. Nonetheless, he contends that when an officer acts outside his or her authority, he or she is acting solely as a private citizen, which by definition takes the officer outside the protection of the statute. In so contending, the appellant relies on *State v. Woods*, 790 S.W.2d 253 (Mo.App.1990). His reliance is misplaced.

In *Woods*, the Southern District of this court was confronted with the issue of whether an off-duty deputy sheriff, who had been hired as a private security guard for a hunting lodge, was acting in an official or private capacity for purposes of the Fourth Amendment when he, without authorization from the defendant, his private employer, searched the defendant's bedroom and found twelve marijuana ciga-

rettes and drug-related items, which he turned over to the local authorities. 790 S.W.2d at 258. The defendant, after being charged, sought to suppress the items seized as being the products of an unlawful search and seizure in that the deputy sheriff did not have probable cause for his search. *Id.* at 256. Inasmuch as the court recognized that the Fourth Amendment protection only applies to a government official acting in his or her official capacity, the threshold issue in determining whether to suppress was whether the deputy was acting in his official capacity or in a private capacity. *Id.* at 257. Recognizing that official involvement for purposes of the Fourth Amendment "is not measured by the primary occupation of the actor, but by the *capacity* in which he acts at the time in question," *id.* (citations omitted) (emphasis in original), the court ultimately determined that the trial court was correct in suppressing the evidence in question because it found that the record indicated that the deputy was acting in his official capacity when he conducted the warrantless search of the defendant's bedroom and that he did so without probable cause. *Id.* at 259. As such, as we read *Woods*, it does not support the appellant's position in the present case in that it stands, *inter alia*, for the proposition that despite the fact that a law enforcement officer acts in violation of the Fourth Amendment, he or she can still be found to be acting in his or her official capacity as a law enforcement officer. As recognized by the United States Supreme Court in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 391–92, 91 S.Ct. 1999, 2002, 29 L.Ed.2d 619, 623–24 (1971), an actor does not cease to be a government official when he or she acts unconstitutionally. "[P]ower, once granted, does not disappear like a magic gift when it is wrongfully used." 403 U.S. at 392, 91 S.Ct. at 2002, 29 L.Ed.2d at 624.

In *Brown*, the defendant claimed on appeal to the Eastern District of this court that the evidence was insufficient to convict him of assaulting a law enforcement officer in the second degree under § 565.082 because the statute required the victim to be actively engaged in the performance of the duties imposed on him by law and the victim in question was off duty at the time of the assault. 989 S.W.2d at 653. First recognizing that the prior statute governing assaults on law enforcement officers, § 557.215 (repealed 1977), required a showing that the officer was "actively engaged in the performance of duties imposed on him by law" but § 565.082 did not, the court interpreted that statute as applying to an off-duty law enforcement officer. *Id.* at 654. Logically, inasmuch as § 565.081.1, governing an assault of a law enforcement officer in the first degree, also does not contain such language, *Brown* would support an interpretation that this statute does not require a showing that the victim, when assaulted, was acting constitutionally or lawfully in the discharge of his or her duties.

An interpretation of § 565.081 as not requiring proof that the victim was acting constitutionally at the time of the alleged assault is consistent with the legislative intent expressed in § 575.150, RSMo Supp. 1996, regarding resisting or interfering with an arrest. In that regard, § 575.150.3, RSMo Supp.1996, provides: "It is no defense to a prosecution pursuant to subsection 1 of this section that the law enforcement officer was acting unlawfully in making the arrest. However, nothing in this section shall be construed to bar civil suits for unlawful arrest." We read this statute as expressing a legislative intent to protect a law enforcement officer who in his or her official capacity as a law enforcement officer was attempting to carry out his or her official duty to effectuate an arrest even though he or she may have done so in an unconstitutional or unlawful manner. Thus, it seems illogical to us that given the same factual situation, an officer attempting to carry out an official duty, albeit unconstitutionally, the legislature would deny an officer the protection of § 565.081.

■ For the reasons stated, we find that in order for the State to make a submissible case under § 565.081 it was not required to show that the victim was acting constitutionally in carrying out his official duties during the incident in question, as the appellant contends. As such, the State's evidence showing that the victim of the assault was a law enforcement officer, as defined in § 556.061(17), RSMo Supp.1999, of which the appellant was well aware, and that he was acting in his official capacity as a police officer at the pertinent times in question, was sufficient to make a submissible case under § 565.081, and the trial court did not err in denying the appellant's motion for judgment of acquittal notwithstanding the verdicts.

### Conclusion

The judgment of the circuit court convicting the appellant of the class A felony of assaulting a law enforcement officer, § 565.081, and the class A felony of armed criminal action, § 571.015, is affirmed.

SPINDEN, C.J., and NEWTON, J., concur.