**STATE of Missouri, Respondent,**

v.

**Jerod Mathew REED, Appellant.**

**No. WD 75314.**

Missouri Court of Appeals,
Western District.

June 25, 2013.

---

**3.** Having reached this conclusion, we need     not address Appellant's other point on appeal.

Chris Koster, Attorney General, Todd T. Smith, Assistant Attorney General, Jefferson City, MO, for respondent.

Craig A. Johnston, Assistant Public Defender, Columbia, MO, for appellant.

Before Division I: GARY D. WITT, Presiding Judge, and THOMAS H. NEWTON and MARK D. PFEIFFER, Judges.

MARK D. PFEIFFER, Judge.

Jerod Reed ("Reed") appeals the judgment of the Circuit Court of Adair County, Missouri ("trial court"), finding him guilty, following a bench trial, of two counts of assault of a law enforcement officer in the first degree, § 565.081.1, RSMo Cum. Supp.2010, and one count each of armed criminal action, § 571.015, RSMo 2000, and resisting arrest, § 575.150, RSMo Cum. Supp.2010. On appeal, Reed challenges the sufficiency of the evidence on the two counts of assault of a law enforcement officer.[1] We affirm.

## Factual and Procedural Background

On the morning of May 10, 2011, plain-clothed detectives[2] Jeremy Cordray and

---

1. Reed also argues that the associated convictions for armed criminal action, as a matter of law, cannot stand if the underlying felony convictions for assaulting a law enforcement officer are reversed. *State v. Summers*, 43 S.W.3d 323, 326 n. 3 (Mo.App. W.D. 2001). While we agree with this legal principle, the converse is also true—that, absent any other appellate argument, the associated convictions for armed criminal action may be sustained upon our conclusion that the underlying assault convictions are sustained on appeal.

2. The Kirksville Police Department's policy for plain-clothed detectives was that they were required to wear their badges on their

Justin Jones [3] and uniformed police officer Rich Harden went to 610 North Main Street in Kirksville in order to locate and arrest Reed. There were outstanding warrants for Reed for the offenses of statutory rape, child molestation, harassment, and failure to appear in court. The officers spoke with some of Reed's relatives, who were at the adjacent house and who lived either there or at 610 North Main. The relatives stated that they did not know Reed's whereabouts; Reed, however, was located by the detectives at the 610 North Main residence shortly thereafter, with some of these same relatives present outside of 610 North Main at the time Reed was discovered at that residence. After the first contact with Reed's relatives and their insistence that they had no idea of Reed's whereabouts, the officers left and spoke with one of Reed's associates, who confirmed that he had spoken with Reed the previous day at 610 North Main. Thus, the two detectives, minus Officer Harden, returned to 610 North Main. This time, they spoke with the same relatives of Reed with whom they had spoken earlier and also with a young woman who was one of Reed's sisters. The young woman was crying, told the detectives that Reed had been present at 610 North Main earlier that morning, told them that she did not want to go to jail, and ultimately led the detectives into the house, whereupon she showed the detectives the room Reed occupied.

In the hallway, Detective Jones reminded Detective Cordray about the information their sources had provided that Reed may be armed. Detective Jones knocked on Reed's bedroom door, which was slightly ajar. Jones opened Reed's door and saw Reed standing with his arms at his sides with one hand tucked behind his leg. Detective Jones, who was clearly displaying his law enforcement badge, and with whom Reed had had previous contact as a law enforcement officer, commanded Reed to show his hands and then not to move. Detective Cordray simultaneously advised Reed, "You are under arrest." Reed responded by throwing the iPod he was holding to the ground and reaching for his weapon, a semi-automatic .32 caliber handgun. Detective Jones yelled "Gun," and he grabbed Reed's right arm. Detective Cordray also grabbed Reed, and a struggle to control Reed ensued. Both detectives attempted to get the gun from Reed or at least to move the point of the barrel away from them, and Reed continually resisted their efforts. During the skirmish, the detectives and Reed all fell onto Reed's bed, and Reed fired his pistol, narrowly missing the heads of both detectives. Reed continued fighting with the detectives, pulling the trigger again and again, only to discover that the gun was not firing. Eventually, the detectives were able to pry the gun from Reed and place him under arrest.

Though Reed was not, in fact, physically injured in the melee, he moaned in contrived pain and acted disoriented, prompting the detectives to call for an ambulance. Officer Harden, who had been called back to the scene, rode in the ambulance with Reed. During the ambulance ride, Officer Harden overheard Reed telling ambulance personnel that he had not attempted to commit suicide when he fired his gun during the scuffle with the detectives.

---

belts nearest the point of the location of their service revolvers. There is no allegation by Reed or Reed's attorneys that either detective violated this policy on the date of the incident.

3. Though plain-clothed, Detective Jones knew Reed from previous law enforcement interactions—and vice versa.

Testing of Reed's weapon revealed that there had been only one bullet in the semiautomatic handgun. In fact, the spent shell casing from the shot that was successfully fired by Reed remained inside the chamber of the handgun. The State's expert testified about the circumstances upon which a spent shell casing may be caused not to have been ejected from the handgun after it was fired and how that would have permitted Reed to keep squeezing the trigger, even though there were no more bullets in the gun's magazine. The State's theory was that these were precisely the circumstances that existed during the detectives' arrest skirmish with Reed.

The trial court found Reed guilty on all counts and entered judgment upon those convictions accordingly. This appeal follows.

### Standard of Review

■ In our review of a criminal bench trial, the sufficiency of the evidence is determined by the same standard as in a jury-tried case. *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992). Thus, when considering a challenge to the sufficiency of the evidence to support a criminal conviction, our review "is limited to determining whether the evidence is sufficient to persuade any reasonable juror as to each of the elements of the crime, beyond a reasonable doubt." *State v. O'Brien*, 857 S.W.2d 212, 215 (Mo. banc 1993). We consider all evidence in the light most favorable to the prosecution and ignore any evidence or inferences to be drawn therefrom that do not support a finding of guilt. *Id.* at 215–16. This court "does not act as a super juror with veto powers, but gives great deference to the trier of fact." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998) (citation omitted) (internal quotation omitted).

### Analysis

"A person commits the crime of assault of a law enforcement officer ... in the first degree if such person attempts to kill or knowingly causes or attempts to cause serious physical injury to a law enforcement officer...." § 565.081.1. Reed challenges the sufficiency of the evidence to support two different aspects of his convictions. First, he claims that there was insufficient evidence presented to establish that Reed knew the detectives were law enforcement officers. Second, he claims that there was insufficient evidence presented that he attempted to kill or attempted to cause serious physical injury to *both* detectives by firing a *single* shot.

### Knowledge that the detectives were law enforcement officers

■ To convict under section 565.081, the State's burden of proof required the State to prove that Reed knew or was aware that detectives Jones and Cordray were law enforcement officers. *See State v. Summers*, 43 S.W.3d 323, 327 (Mo.App. W.D.2001). Where an officer is in plain clothes and does not announce himself as a police officer, other facts and circumstances may support a conclusion that the defendant knew the identity of his victim. In *State v. Baker*, 636 S.W.2d 902, 907 (Mo. banc 1982), the Supreme Court found sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that a defendant was aware his victim was a police officer when the undercover officer, dressed in jeans and a softball shirt and sitting in an unmarked car, had a police radio in his car and was shot in the back with his own service revolver.

■ Here, Reed had had previous law enforcement interactions with the distinctive-looking Detective Jones, while Jones had been both in and out of uniform. And although Reed had not had prior interac-

tions with Detective Cordray, detectives Jones and Cordray and uniformed officer Harden had earlier identified themselves as law enforcement when they spoke to Reed's relatives at the house adjacent to 610 North Main (who, coincidentally, were the same relatives discovered outside 610 North Main when the detectives returned to that residence later that same day), who were made aware that they were looking for Reed. Before the officers returned to 610 North Main, these same relatives would have had sufficient time to notify Reed—in his bedroom at 610 North Main—about the inquiry by these law enforcement officers. Reed was surely aware that there were numerous outstanding warrants for his arrest, and as such, it would not have been any surprise to him that law enforcement officers were looking for him. Immediately prior to the altercation, Detective Jones testified that he had his badge plainly visible at his waist, near his service firearm, when he barked instructions to Reed to show his hands and then not to move. Moreover, although the detectives did not formally announce themselves as police, Detective Cordray, who was behind Jones, shouted to Reed that he was "under arrest" before Reed drew his weapon. The totality of this evidence is more than sufficient to permit a rational trier of fact to find, beyond a reasonable doubt, that Reed was fully cognizant of the fact that Cordray and Jones were law enforcement officers attempting to complete Reed's arrest subject to outstanding arrest warrants when he chose to respond by assaulting them with a deadly weapon.

### Assault of both law enforcement officers

For a trier of fact to find that the defendant attempted to kill or attempted to cause serious physical injury to a law enforcement officer under section 565.081, the State bore the burden of proving a "very specific intent" on Reed's part to accomplish that objective. *See State v. Chambers*, 998 S.W.2d 85, 90 (Mo.App. W.D.1999); *State v. Gonzales*, 652 S.W.2d 719, 722 (Mo.App. W.D.1983).

■ The requisite showing of intent, however, is "generally not susceptible to proof by direct evidence." *Chambers*, 998 S.W.2d at 90. "Instead, the necessary intent may be based upon circumstantial evidence or inferred from surrounding facts" such as the "defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct." *Id.* Additionally, we may consider the type of weapon used, the manner and circumstances under which it is used, the result, and any other relevant factors. *Bryant v. State*, 316 S.W.3d 503, 509 (Mo.App. E.D. 2010) (citing *State v. Mann*, 129 S.W.3d 462, 466 (Mo.App. S.D.2004)).

The Missouri Supreme Court has found that merely having a gun in a ready-to-fire position and placing the gun between the defendant and an officer while struggling with the officer was evidence of intent sufficient to support a conviction under section 565.081. *Brooks v. State*, 242 S.W.3d 705, 708 (Mo. banc 2008). Missouri courts have also held that a defendant's attempts to evade capture bolster the State's showing of intent to assault an officer under section 565.081. *See, e.g., State v. Depriest*, 822 S.W.2d 488, 491 (Mo. App. S.D.1991) ("Defendant here was undoubtedly aware of warrants for his arrest. The jury could reasonably infer Defendant ran to avoid arrest, and his motive to shoot [the officer] was to avoid a return to prison."). *See also Bryant*, 316 S.W.3d at 509 ("Movant's flight from the officers moments after they attempted to place him under arrest[ ] further bolsters Movant's specific intent to kill or cause serious physical injury to [the officer]"); *Mann*, 129 S.W.3d at 467 ("The fact that Appellant

intentionally discharged a weapon 'in the proximity' of a police officer is illustrative of his decision to take a substantial step toward injuring the officer if necessary to get away.").

■ Here, Reed had a loaded pistol, which he purposely shot at close range while involved in a skirmish with detectives Jones and Cordray—this, after being told by Detective Jones, whom Reed knew to be a law enforcement officer, that he was to show his hands and then not move, while simultaneously being advised by the other detective that he was "under arrest." The State's expert testified that, since the firearm's trigger required six pounds of pressure to be fired, the firing was not likely accidental but, instead, was intentional. Reed's intent to harm both detectives is further corroborated by the fact that Reed attempted to fire his weapon several more times after firing the first shot. Reed also stated to ambulance personnel after the altercation with the detectives that he was not trying to commit suicide when he fired his pistol, further confirming his intended targets—the detectives.

■ Reed claims that it was impossible for him to have attempted to kill or to seriously injure both detectives having succeeded in firing only a single shot from a handgun that, after the fact, was discovered to have held only one bullet during the skirmish with the detectives. However, intent—no matter how specific the intent required by the evidentiary burden of proof—is not measured by "possibilities" for completing the desired act. Instead, we measure intent by whether or not "a reasonable juror might have found that [the defendant's] *conduct* strongly corroborated the firmness of his purpose to kill or cause serious injury to [the intended victim(s)]." *State v. Ward*, 273 S.W.3d 43, 46 (Mo.App. W.D.2008) (emphasis added).

In this case, Reed's *conduct* of *attempting* to fire the gun multiple additional times after he fired the first shot strongly corroborated the firmness of his purpose to kill or cause serious injury to *both* detectives. Certainly, a reasonable trier of fact could infer from these circumstances, beyond a reasonable doubt, that Reed *believed* the gun contained more than a single bullet and that his multiple acts of pulling the trigger were intentional attempts to kill or seriously injure *both* detectives with whom he was fighting.

This evidence constitutes substantial evidence sufficient to support Reed's convictions for both counts of assault of a law enforcement officer under section 565.081.

Point denied.

### Conclusion

The record before us reflects that there was substantial evidence at Reed's trial to support the trial court's judgment finding Reed guilty of both counts of assault of a law enforcement officer in the first degree; thus, these convictions and his conviction for armed criminal action based upon the assaults are sustained. Accordingly, the judgment of the trial court is affirmed.

GARY D. WITT, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.