

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, )<br><br>Respondent, )<br>v. )<br><br>COLE G. FOX, )<br><br>Appellant. ) | WD84800<br><br>OPINION FILED:<br>November 22, 2022 |

**Appeal from the Circuit Court of Cass County, Missouri**
**The Honorable Stacey Lett, Judge**

**Before Division Three:** Karen King Mitchell, Presiding Judge, and
Cynthia L. Martin and Anthony Rex Gabbert, Judges

Cole Fox appeals, following a jury trial, his conviction of the Class D felony of possessing the controlled substance tetrahydrocannabinol (THC), § 579.015,[1] for which he was sentenced to one day in jail. Fox raises two points on appeal. In his first point, he argues the charging document (information) failed to state a crime, in that the information did not allege that Fox possessed more than 35 grams of THC and, thus, the trial court lacked jurisdiction. In his second point, Fox argues that the evidence was insufficient to support the conviction. Finding no merit in Fox's claims, we affirm.

---

[1] All statutory citations are to the Revised Statutes of Missouri, as updated through the 2018 Supplement.

## Background[2]

On August 19, 2019, Cole Fox was driving on I-49 in Cass County, Missouri, when he was stopped by Highway Patrol Corporal David Jones for a traffic violation. While both were seated in Corporal Jones's patrol car, he asked Fox if he had any marijuana in the car, and Fox said he had two dab canisters containing THC wax, a smoking pipe, and a "one-hitter." Corporal Jones then searched Fox's vehicle, finding two round rubber dab canisters under the rear bench seat. Fox's passengers told Corporal Jones that the canisters had been moved to that location from the rear passenger-side door. The cannisters had no labels, unlike commercially sold CBD canisters with labels that identify the contents. Upon opening the canisters, Corporal Jones discovered a tan, waxy substance. Corporal Jones also found in Fox's car a glass smoking pipe, commonly used to smoke THC wax and which Fox identified as the pipe he used with the dab canisters; a "one-hitter" pipe for smoking marijuana; and a canister that appeared to contain marijuana.

Corporal Jones secured the seized items into evidence envelopes, created labels for the envelopes, sealed the envelopes with evidence tape, and placed them in the Highway Patrol evidence locker. Corporal Jones then sent one of the sealed envelopes containing one of the dab canisters to the Missouri Highway Patrol crime lab in Carthage, Missouri, for testing. There, criminalist Bryanna Yaw tested the substance in the canister and determined it contained THC. The substance she collected from the canister weighed .05 grams.

Fox was charged on July 6, 2020, with one Class D felony count under § 579.015 for possession of a controlled substance. On August 5, 2021, Fox was tried by a jury, found guilty of the charge, and sentenced to one day in the county jail. Final judgment of conviction was entered September 2, 2021, and Fox appeals.

---

[2] "We view the evidence in the light most favorable to the jury's verdicts, disregarding all contrary evidence and inferences." *State v. Jackson*, 636 S.W.3d 908, 913 n.1 (Mo. App. W.D. 2021).

**Analysis**

Fox raises two claims. First, he argues that the trial court lacked jurisdiction because the information failed to state a crime. Second, he argues the evidence was insufficient to support his conviction.

### I. The trial court had jurisdiction because the charging document sufficiently pled that Fox was in possession of a controlled substance, THC.

Review of the sufficiency of an information or indictment is a question of law, reviewed *de novo*. *State v. Boone Ret. Ctr.*, 26 S.W.3d 265, 270 (Mo. App. W.D. 2000). Fox was convicted under § 579.015, which provides that "possession of any controlled substance except thirty-five grams or less of marijuana or any synthetic cannabinoid" is a Class D felony. § 579.015.2. Much of Fox's argument rests on his assertion that possession of THC is the same offense as possession of marijuana because THC is present in marijuana. Therefore, he argues, (1) a felony conviction for possession of THC is subject to the same weight exception as marijuana, requiring possession of more than 35 grams of THC, and (2) because the information did not address the amount of THC he possessed, it failed to state a crime and the trial court lacked jurisdiction. We disagree.

"A challenge to the sufficiency of a charging document tests whether it alleges the essential elements of the offense" as set out in the statute. *State v. Rohra*, 545 S.W.3d 344, 347 (Mo. banc 2018). Identifying the essential elements of the offense is a question of statutory interpretation. "When engaging in statutory interpretation, [appellate courts] are required 'to determine the intent of the legislature from the words used in the statute and give effect to the intent,' while keeping in mind that the language used should be given its plain and ordinary meaning." *State v. Goddard*, 34 S.W.3d 436, 438 (Mo. App. W.D. 2000) (quoting *Mo. Comm'n on Hum. Rts. v. Red Dragon Rest., Inc.*, 991 S.W.2d 161, 166 (Mo. App. W.D. 1999)). "If the language of the statute is unambiguous, there is no basis for construction of the statute and the court must give effect to the

3

statute as it is written." *Id*. (quoting *Kansas City Star Co. v. Fulson*, 859 S.W.2d 934, 938 (Mo. App. W.D. 1993)). If a statute is subject to construction, appellate courts should interpret the statute to accomplish the legislature's intent and should avoid interpreting it so as to "render some phrases mere surplusage." *State ex rel. Jones v. Prokes*, 637 S.W.3d 110, 116 (Mo. App. W.D. 2021) (quoting *Middleton v. Mo. Dep't of Corr.*, 278 S.W.3d 193, 196 (Mo. banc 2009)).

When § 579.015 is read in conjunction with relevant provisions of chapter 195, the elements of felony possession of a controlled substance are unambiguous. A person commits the offense of possession of a controlled substance if he "knowingly possesses a controlled substance, except as authorized by this chapter or chapter 195." § 579.015.1. The possession of a controlled substance is a D felony under § 579.015.2 unless the controlled substance possessed is "thirty-five grams or less of marijuana or any synthetic cannabinoid." Section 195.010 defines words and phrases used in chapters 195 and 579, "unless the context otherwise requires." The phrase "controlled substance" is defined as "a drug, substance, or immediate precursor in Schedule I through V listed in this chapter." § 195.010(6). Marijuana, THC, and synthetic cannabinoids are separately listed as Schedule I controlled substances. §§ 195.017.2(5)(ff), (nn), (uu).

Section 195.010(28) defines marijuana as:

> all parts of the plant genus Cannabis in any species or form thereof . . . the seeds thereof . . . and every . . . derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake, or the sterilized seed of the plant which is incapable of germination.

§ 195.010(28). Section 195.010 does not define the term tetrahydrocannabinol or THC. However, in separately listing THC as a controlled substance, § 195.017.2(5)(nn) describes THC as a material or compound "naturally contained in a plant of the genus Cannabis (cannabis plant),

4

except industrial hemp, as well as synthetic equivalents of the substances contained in the cannabis plant." In other words, in listing THC as a separate controlled substance, § 195.017 deliberately treats THC *not* as marijuana or as a part of the cannabis plant but as a substance or compound found *in* both cannabis and synthetic cannabinoids.

The relevant statutes, read in combination, are unambiguous. Section 579.015 makes the possession of controlled substances, as identified in chapter 195, a felony but creates an exception for the possession of relatively small amounts of marijuana or any synthetic cannabinoid. To find THC subject to the exception in § 579.015.2 would require us to ignore specific language in the statutes, rendering that language either nonsensical or surplusage. *See State ex rel. Jones*, 637 S.W.3d at 116 (urging a "harmonious interpretation" of statutes relating to the same subject matter) (quoting *Roesing v. Dir. of Revenue*, 573 S.W.3d 634, 639 (Mo. banc 2019)). If THC were meant to be treated the same as marijuana, there would have been no need to list it as a separate controlled substance in § 195.017. And, if THC were subject to the same weight exception as marijuana, THC would have been listed in the exception set out in § 579.015.2.

Even if we were to conclude that the relevant statutes are ambiguous and thus subject to interpretation—a finding we do not make—interpreting the weight exception to felony possession of a controlled substance set out in § 579.015.2 as not including THC is consistent with the clear intent of the legislature to treat substances differently depending on their potential for abuse. The legislature placed substances in schedules based on their "potential for abuse." § 195.017.1(1). Included in Schedule I are various opiates and opiate-like substances,[3] followed by a broad category into which both marijuana and THC are specifically named because of their hallucinogenic properties:

---

[3] Schedule I includes opiates, § 195.017.2(2); opium derivatives, § 195.017.2(3); and "opiate similar synthetic substances," § 195.017.2(4).

Any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers and salts of isomers, unless specifically excepted . . . .

§ 195. 017.2(5).

When a technical term like THC is used in a statute but not defined, the generally accepted scientific definition should be used. § 1.090. Words and phrases having a technical meaning are to be applied in their technical sense, unless it appears they were intended to be used otherwise. *St. Louis v. Triangle Fuel Co.*, 193 S.W.2d 914, 915 (Mo. App. 1946). "Technical words" are those that pertain to "the useful or mechanical arts, or any science, business, profession or sport, or the like." *Rathjen v. Reorganized Sch. Dist. R-II*, 284 S.W.2d 516, 529 (Mo. banc 1955) (quoting Webster's New Int'l Dict., 2d ed.).

The scientific definition of THC shows that it is not synonymous with marijuana. As defined by the National Institutes of Health, THC is the specific "mind-altering chemical" in marijuana. *Cannabis (Marijuana)*, Nat'l Inst. On Drug Abuse (NIDA), https://nida.nih.gov/research-topics/cannabis-marijuana (last visited November 14, 2022). The *Cannibis sativa* plant, from which marijuana is made, contains over 500 different chemical substances, with only one of them being THC. https://www.nccih.nih.gov/health/cannabis-marijuana-and-cannabinoids-what-you-need-to-know (last visited November 14, 2022). Indeed, marijuana is not even the same thing as "cannabis" because "[t]he word 'cannabis' refers to all products derived from the plant *Cannabis sativa*." *Id.* A far more potent drug than marijuana, however, emerges when THC is extracted from the marijuana plant in a form such as wax. https://nida.nih.gov/publications/drugfacts/cannabis-marijuana#mjextracts (last visited November 14, 2022). "Smoking THC-rich resins extracted from the marijuana plant . . . can deliver extremely

6

large amounts of THC to the body"; the practice of smoking such THC-rich resins is called "dabbing." *Id.*

Missouri has recognized that the level of THC in marijuana "cannot be standardized and controlled" because the level of THC varies "depending upon a variety of factors from where it was grown to the time of day it was harvested." *State v. McManus*, 718 S.W.2d 130, 132 (Mo. banc 1986) (citing 47 Fed. Reg. 28,141 (1982)). Thus, although marijuana includes some level of THC, possession of a greater volume of marijuana may be needed to have the same hallucinogenic property as a small quantity of THC, such as that found in THC wax. Thus, it makes sense that the possession of a small amount of marijuana (35 grams or less) is not a felony, but possession of THC, regardless of the quantity, is. § 579.015.2.

Another example of the treatment of substances differently based on the amount of THC present is the legislature's treatment of industrial hemp. Section 195.017's list of controlled substances includes marijuana, defined as "marijuana or marihuana, except industrial hemp," § 195.017.2(5)(ff), and THC, which also excludes "industrial hemp." § 195.017.2(5)(nn). "Industrial hemp" is defined as containing a lower percentage level of THC than illegal industrial hemp. § 195.010(24).[4] Thus, this statutory scheme provides penalties for industrial hemp containing higher levels of THC. Similarly, it makes sense that, by recognizing THC as a separate controlled substance and not including THC within the weight exception in § 579.015.2, the legislature intended to treat THC differently than marijuana and to make possession of THC, without a weight exception, a Class D felony.

Fox relies on *State v. Randall*, 540 S.W.2d 156, 158 (Mo. App. 1976), which held that hashish was "marijuana" under Chapter 195. However, the *Randall* holding was based on

---

[4] "Illegal industrial hemp" requires a THC concentration "exceeding three-tenths of one percent on a dry weight basis." § 195.010(21).

§ 195.017's failure to list hashish as a controlled substance (while noting that it does specifically list marijuana and THC). *Id.* To constitute a crime, an act must be proscribed by the legislature *and* a penalty must be imposed. *Id.* at 159. In *Randall*, the charge for hashish possession did not allege a crime because hashish was not separately defined as a controlled substance in § 195.017. *Id.* Here, the State's information alleged the crime of possessing a controlled substance specifically listed in § 195.017.2(5)(nn). There was no reason for the legislature to include THC in § 195.017 if the legislature meant for it to be treated as marijuana.[5]

Point I is denied.

## II.     There was sufficient evidence to support the conviction.

In his second point, Fox alleges the evidence was insufficient to support his conviction for possession of a controlled substance. The standard of appellate review for a claim of insufficient evidence is "limited to determining whether the evidence is sufficient to persuade any reasonable juror as to each of the elements of the crime, beyond a reasonable doubt." *State v. Reed*, 402 S.W.3d 146, 150 (Mo. App. W.D. 2013) (quoting *State v. O'Brien*, 857 S.W.2d 212, 215-16 (Mo. banc 1993)). Evidence is reviewed "in the light most favorable to the prosecution," giving "great deference to the trier of fact" and ignoring evidence that does not support a finding of guilt. *Id.* (quoting *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998)).[6]

---

[5] As in Missouri, the federal drug laws list both marijuana and THC separately as controlled substances. We recognize that some federal cases have held that, to avoid an overlap between THC and marijuana, the separate listing of THC should be interpreted to refer solely to a synthetically produced compound. *See, e.g., Hemp Indus. Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082, 1089 (9th Cir. 2003); *United States v. McMahon*, 861 F.2d 8, 11 (1st Cir. 1988). But Fox has neither cited this case law nor argued for a similar interpretation of Missouri's controlled substances laws. Even if he had, we would have to consider differences in the wording of the relevant Missouri statutes as compared to the federal ones. Furthermore, the record in this case does not reflect whether the wax in Fox's possession was derived from cannabis plants or instead synthesized. In light of these facts, we do not address whether the listing of THC in § 195.017.2(5)(nn) should be read to distinguish between synthetic and cannabis-derived substances.

[6] Fox appears to acknowledge this standard, despite stating that "[s]ufficiency of the evidence is a question of law that is reviewed *de novo*."

8

Point II is based, in part, on the argument that the crime of THC possession requires proof of a minimum weight. We reject this part of Fox's argument for the reasons explained above. No such evidence was required because THC does not fall within the weight exception to felony possession of a controlled substance in § 579.015.2.

Fox also argues that the State did not prove that the tan, waxy substance seized from him was a controlled substance because there was insufficient evidence that it was *not* extracted from "industrial hemp." A wax, such as the one involved in this case, is the controlled substance THC only if it is extracted from a "plant of the genus Cannabis" or the synthetic equivalent of a cannabis plant but *not* if it is derived from industrial hemp. § 195.017.2(5)(nn). Industrial hemp is defined as "[a]ll nonseed parts and varieties of the Cannabis sativa L. plant, growing or not, that contain an average [THC] concentration that does not exceed three-tenths of one percent on a dry weight basis or the maximum concentration allowed under federal law, whichever is greater." § 195.010(24). Conversely, "Illegal industrial hemp" is defined as "[a]ll nonseed parts and varieties of the Cannabis sativa L. plant, growing or not, that contain an average [THC] concentration exceeding three-tenths of one percent on a dry weight basis." § 195.010(21). Thus, whether a substance is industrial hemp or illegal industrial hemp depends on the level of THC concentration; neither definition refers to wax but simply "nonseed parts and varieties" of the plant.

Fox argues that, to prove that he possessed a controlled substance, the State had to present evidence of the level of THC in the substance so as to show that it was not derived from industrial hemp. This argument, however, is directly foreclosed by § 579.015.5, which places the burden on the defendant to establish the applicability of any exceptions to guilt in Chapter 579:

> In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provision of this chapter or chapter 195, it shall not be necessary to include any exception, excuse, proviso, or exemption contained

9

in this chapter or chapter 195, and the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant.

§ 579.015.5.[7] Thus, contrary to Fox's argument, the State bore no burden to prove that the substance was *not* industrial hemp. The State's only burden was to establish that Fox "knowingly possesse[d] a controlled substance." § 579.015.1.

The State's criminalist testified that the tan, waxy substance she tested contained THC. In addition to the criminalist's testimony, the State presented other evidence establishing Fox's guilt. For example, the State presented evidence that, during the traffic stop, when asked whether he had marijuana in the vehicle, Fox admitted to Corporal Jones that he had "two dab cannisters" containing THC wax. Also, Corporal Jones testified that when someone says he has "a dab," based on his training and experience, he is referring to THC wax. Corporal Jones searched Fox's vehicle and found the rubber dab canisters hidden under the rear bench seat. The passengers said the dabs were moved from the rear passenger-side door to under the seat, suggesting an effort to conceal the dabs. Corporal Jones also found drug paraphernalia, including a device "commonly used to smoke THC oil or wax" and some marijuana. Fox stated that the device was used with the dab canisters, and it was found with the dab cannisters. And, though the State bore no burden to prove anything other than the presence of THC, Corporal Jones testified that legal cannabis products, such as CBD, are usually packaged with printed labels, and that Fox's cannisters containing the THC wax had no such labeling.

Fox also argues that the criminalist's testimony failed to establish that the substance tested and determined to contain THC was the same substance seized from him by Corporal Jones. Fox

---

[7] This "exception" language in § 579.015.5 was transferred from § 195.202 by amendment L.2014, S.B. No. 491, § A, effective January 1, 2017. Section 195.202 had repeatedly been interpreted as placing the burden on the defendant to show an exception applied. *See*, *e.g.*, *State v. Sullivan*, 935 S.W.2d 747, 758 (Mo. App. S.D. 1996) (holding that "once the State demonstrated that the substance was marijuana, the burden was on Defendant to prove that the substance contained portions of the marijuana plant excluded from the statute").

10

argues both a failure to prove proper chain of custody and a failure of the criminalist to identify the tested substance as the same substance seized from Fox. "There is no requirement that everyone who touches an exhibit must testify, or that the state exclude every possibility of tampering, in order for the evidence to be admissible." *State v. Wagner*, 587 S.W.2d 299, 302 (Mo. App. E.D. 1979). "[P]roof of a chain of custody does not require proof of hand-to-hand custody of the evidence, nor proof that eliminates all possibility that the evidence has been disturbed." *State v. Pennington*, 493 S.W.3d 926, 931-32 (Mo. App. W.D. 2016) (quoting *State v. Link*, 25 S.W.3d 136, 146 (Mo. banc 2000)). "The trial court may assume, absent a showing of bad faith, ill will or proof, that officials having custody of exhibits properly discharged their duties and that no tampering occurred." *Id.* at 932 (quoting *Link*, 25 S.W.3d at 146).

Here, sufficient evidence supports the finding that the substance tested at the crime lab was the same substance seized from Fox. Corporal Jones testified that, after he seized the rubber canister containing the tan, waxy substance from Fox, he put the canister in an envelope (Exhibit 7), sealed it with evidence tape, and marked the envelope with his date and initials. Corporal Jones sent the envelope to the crime lab in Carthage, Missouri, for testing. At the crime lab, Criminalist Bryanna Yaw received a sealed manila envelope from the Highway Patrol that had not been opened since that seal was applied.[8] She opened the envelope, inside which she found a rubber canister containing a tan substance. She tested this substance and determined that it contained THC. She identified Exhibit 10 as her report of the testing of this substance. It would have been helpful if the record showed that Yaw had identified the evidence envelope as "Exhibit 7," but Corporal Jones also identified Yaw's report, Exhibit 10, as the lab report on the substance seized from Fox that he had sent to the crime lab for testing.

---

[8] Yaw testified that no corrective seals had been applied to the envelope to indicate it had been opened after the initial sealing.

This testimony adequately establishes that the substance seized was the substance tested, because Corporal Jones identifies Yaw's report, Exhibit 10, as the report of test results on the substance, Exhibit 7, seized from Fox. Fox incorrectly argues that *State v. Brightwell*, 984 S.W.2d 124 (Mo. App. W.D. 1998), is "nearly identical." In *Brightwell*, the State offered only the chemist's report. *Id.* at 126. Unlike the criminalist here, the chemist in *Brightwell* did not testify to supply the missing connection between the report and the substance seized. *Id.* Thus, there was no evidence to link the substances sold by the *Brightwell* defendants to the substances tested in the lab report. *Id.* By contrast, here, Yaw testified that she received a sealed manila envelope containing the dab canister, then issued her report (Exhibit 10), which Corporal Jones also identified as the test report on the substance he seized from Fox and sent to the lab for testing. The record supports the presumption under *Pennington* that there was no tampering or chain of custody problem with the substance seized from Fox. Viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence that the substance seized from Fox was the substance confirmed by laboratory testing to contain THC.

Point II is denied.

## Conclusion

The judgment is affirmed.

_____
Karen King Mitchell, Presiding Judge

Cynthia L. Martin and Anthony Rex Gabbert, Judges, concur.